IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 21-00263-01-CR-W-HFS |
| REGINALD A. KING, | ) ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION TO
## DENY DEFENDANT'S MOTION TO SUPPRESS

Before the Court is Defendant's Motion to Suppress Evidence. Defendant moves the Court to suppress all evidence obtained during a car search following his November 11, 2020, arrest. For the following reasons, Defendant's motion should be denied.

### I. INTRODUCTION

On November 16, 2021, an Indictment was returned charging Defendant with one count of possession with intent to distribute PCP, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On March 30, 2023, Defendant filed a motion to suppress. (Doc. 38) The Government responded on April 20, 2023. (Doc. 45) An evidentiary hearing was held on May 1, 2023, with all parties and counsel appearing in person. The Government appeared by Assistant United States Attorney Ashleigh Ragner. Defendant was present, represented by appointed counsel Carie Allen.

1

The Government called Kansas City, Missouri Police Department Detective Robert Vivona to testify. Ciara King testified on behalf of Defendant. The following exhibits were admitted into evidence:

| | |
|---|---|
| Government's Exhibit 1: | Google Map of 35th Street & Park Avenue; |
| Government's Exhibit 2: | Google Map of 35th Street & Park Avenue (Satellite View); |
| Government's Exhibit 3: | Kansas City, Missouri Police Department Tow Policy; |
| Government's Exhibit 4: | KCPD Form 36 P.D. (Inventory Form) [KING_00013]; |
| Government's Exhibit 5: | Citation for Driving without a License [KING_00011]; |
| Government's Exhibit 6: | Citation for Illegal Parking [KING_00012]; and |
| Government's Exhibit 7: | Detective Vivona's Report. |

## II. FINDINGS OF FACT

On the basis of the evidence presented at the suppression hearing, the undersigned submits the following proposed findings of fact:

1. Detective Robert Vivona has been employed with the Kansas City, Missouri Police Department ("KCPD") for twenty-two years. (Tr. at 4) In November of 2020, he was assigned to the Fugitive Apprehension Unit. (Tr. at 7)

2. In November of 2020, the KCPD received an anonymous tip through the Crime Stoppers system that Defendant was staying at 3432 Park Avenue, Kansas City, Missouri, and had an outstanding arrest warrant. (Tr. at 8)

3. Upon the KCPD's receipt of this tip, Detective Vivona was assigned Defendant's fugitive apprehension investigation. (Tr. at 8) Detective Vivona first confirmed Defendant had an existing warrant. (Tr. at 8-9) He then ran Defendant's criminal history and learned that Defendant was a convicted felon. (Tr. at 10) Defendant had three or four convictions and more than ten arrests for drug possession or drug distribution. (Tr. at 10) Defendant also had arrests for fleeing or resisting arrest, assault and firearms offenses. (Tr. at 10)

4. Also as part of this investigation, Detective Vivona ran a computer check for information on vehicles associated with Defendant. (Tr. at 11) He learned that Defendant was the secondary owner of a gray 2006 Mercedes Benz with a Colorado

license plate; the primary owner of the vehicle was Ciara King, Defendant's wife. (Tr. at 11-13)

5. Detective Vivona's investigation also revealed that Defendant had a historical association with the area of 34th Street and Park Avenue. (Tr. at 13) Detective Vivona knew this was a high narcotics trafficking area that had a lot of violent crime. (Tr. at 14)

6. On November 11, 2020, Detective Vivona received an alert from the KCPD's license plate reading camera system that a vehicle bearing the Colorado license plate associated with Defendant's gray Mercedes had been captured traveling in the area of 35th and Park Avenue. (Tr. at 14-15)

7. After receiving this alert, at approximately 12:30 p.m., Detective Vivona went to the area of 35th and Park Avenue to establish surveillance. (Tr. at 15) The only purpose for doing so was to apprehend Defendant on his outstanding warrant; Detective Vivona was not investigating Defendant for any drug or firearm offenses. (Tr. at 15-16, 36)

8. Detective Vivona was wearing khaki pants, a black shirt with "Police" on the sleeves, and a vest that also had "Police" markings on the front and back. (Tr. at 6) He was driving an unmarked vehicle. (Tr. at 6-7)

9. At approximately 12:40 p.m., Detective Vivona observed the gray Mercedes pull up in front of the driveway at 3434 Park, which is on the north side of the street. (Tr. at 17, 18, 19, 40) He observed two or three people walk up to the vehicle on separate instances, where the driver appeared to roll down the window and make several hand-to-hand transactions with the individual who walked up to the vehicle before the individual walked away. (Tr. at 18-20) Each exchange lasted less than a minute. (Tr. at 20) Detective Vivona was not able to see what was exchanged. (Tr. at 19, 40) However, based upon his training and experience, Detective Vivona believed he had observed narcotics transactions. (Tr. at 20-21)

10. Detective Vivona was located on the south side of the intersection of 35th Street and Park looking north when he observed these exchanges. (Tr. at 40; *See* Gvt. Exhs. 1, 2)

11. Defendant was the sole occupant of the Mercedes. (Tr. at 21)

12. At approximately 12:55 p.m., Detective Vivona observed Defendant exit the Mercedes and walk over to the east side of the street where he began speaking with another individual. (Tr. at 19, 21)

13. At this point, law enforcement was able to positively identify Defendant and came up with a plan to effectuate his arrest. (Tr. at 21) Officers knew Defendant's criminal history involved resisting arrest. (Tr. at 21) Since Defendant was in close proximity to a car and also to a house where he was known to live, officers wanted to arrest him outside. (Tr. at 21-22)

14. Law enforcement moved in to arrest Defendant. (Tr. at 22) KCPD Detective Darrin King covered the block behind 34th and Park Avenue in the event of any possible escape attempt; other team members approached Defendant from the front, near the Mercedes. (Tr. at 22, 23, 24)

15. Law enforcement identified themselves to Defendant. (Tr. at 22-23) Defendant began to run. (Tr. at 23) Officers directed Defendant to stop and get on the ground, but Defendant did not comply. (Tr. at 23)

16. Detective Vivona pursued Defendant on foot behind 3432 Park Avenue. (Tr. at 23) Detective King encountered Defendant toward the rear of 3432 Park Avenue and gave Defendant commands to get on the ground; Defendant eventually complied. (Tr. at 23)

17. Defendant was handcuffed and placed under arrest behind 3432 Park. (Tr. at 24) He was then walked to the front of 3434 Park where a search incident to arrest was conducted. (Tr. at 25) Detective Vivona recovered approximately $1,316 from Defendant's left pant pocket and a key fob that was attached to Defendant's belt loop. (Tr. at 26)

18. As Detective Vivona removed items from Defendant's pockets and set them on the trunk of the Mercedes, Defendant spontaneously uttered "This ain't my car." (Tr. at 25)

19. Based on his training and experience, and what he knew at the time, Detective Vivona believed the $1,316 recovered from Defendant's pant pocket was associated

with drug trafficking. (Tr. at 26)

20. Detective Vivona pushed the panic button on the key fob, which caused the alarm on the Mercedes to sound. (Tr. at 27)

21. A computer check revealed that Defendant was not lawfully permitted to drive. (Tr. at 26-27)

22. Detective Vivona decided to tow the Mercedes. (Tr. at 27) This decision was based upon the facts that: the vehicle was illegally parked blocking a driveway; Defendant stated the vehicle was not his, which heightened Detective Vivona's suspicion that there was something inside the vehicle that Defendant did not want officers to find; the Mercedes was unlocked and unsecured, and the area in which it was parked was known for violent crime and property theft; Detective Vivona believed he had observed Defendant making several narcotic sales; and Defendant had been arrested and did not have a valid driver's license. (Tr. at 27-28, 42)

23. No one had asked law enforcement to tow the Mercedes. (Tr. at 29)

24. Defendant did not ask to contact anyone to take custody of the Mercedes. (Tr. at 29)

25. Detective Vivona testified that no more than two minutes elapsed between Defendant's arrest and the time he decided to tow the Mercedes. (Tr. at 28-29)

26. Detective Vivona further testified that he did not recall anyone associated with Defendant standing at or near the Mercedes during this time. (Tr. at 29-30, 37)

27. Detective Vivona testified if any of Defendant's family members had showed up at the scene, it would have been after the decision to tow the Mercedes was made. (Tr. at 30) Even if Defendant's wife would have arrived at the scene and requested the Mercedes, Detective Vivona would not have released it to her. (Tr. at 30, 37)

28. The KCPD's tow policy requires that officers inventory the contents of a vehicle before it is towed and to complete a Form 36PD. (Tr. at 30-32; Gvt. Exhs. 3, 4)

29. As part of the inventory search performed on the Mercedes, law enforcement located a backpack containing a firearm, marijuana, a digital scale, a box of plastic baggies, More cigarettes, and vials of PCP. (Tr. at 32-33)

30. After the inventory was completed, the Mercedes was towed to the KCPD's secure

5

tow lot. (Tr. at 34)

31. Defendant was issued traffic citations for operating a motor vehicle without a valid license and for parking in front of a private driveway. (Tr. at 33-34; Gvt. Exhs. 5, 6)

32. Defendant's wife, Ciara King, testified that upon learning from her cousin-in-law that Defendant was being arrested, she immediately left her home on East 26th Street and went to 3434 Park Avenue. (Tr. at 44-45, 51-53) Mrs. King's home on East 26th Street is approximately five minutes away from 35th and Park Avenue. (Tr. at 53)

33. As she arrived, an officer was walking Defendant from the back of the residences to the front of 3434 Park. (Tr. at 46, 52, 53) Mrs. King testified the Mercedes was locked, because she saw an officer unlock the doors using the key fob. (Tr. at 46-47)

34. Mrs. King testified she told law enforcement the Mercedes was her car and tried to give them her driver's license. (Tr. at 47-48) She stated officers did not look at her license and that she was told to move back. (Tr. at 47-49)

35. Mrs. King would have been able to legally drive the Mercedes. (Tr. at 48)

### III. DISCUSSION

Defendant challenges the November 11, 2020, warrantless search of his vehicle. He argues that the search cannot be justified by any exception to the warrant requirement, thus requiring suppression of the evidence seized therefrom. The Government maintains that the search of Defendant's vehicle was lawful (1) on grounds that the vehicle was abandoned property, (2) pursuant to the automobile exception to the Fourth Amendment, and/or (3) as a valid inventory search.

## A. ABANDONED PROPERTY

The Government first argues that Defendant abandoned the gray Mercedes when he fled from law enforcement, thereby forfeiting his expectation of privacy in the car. "A warrantless search of abandoned property does not implicate the Fourth Amendment, [because] any expectation of privacy in the item search is forfeited upon its abandonment." *United States v. Smith*, 648 F.3d 654, 660 (8th Cir. 2011) (quoting *United States v. James*, 534 F.3d 868, 873 (8th Cir. 2008)). "The issue is not abandonment in the strict property right sense, but rather, whether the defendant in leaving the property has relinquished [his] reasonable expectation of privacy." *Id*. (quoting *United States v. Hoey*, 983 F.2d 890, 892-93 (8th Cir. 1993)). "A finding of abandonment depends on the totality of the circumstances, with 'two important factors [being] denial of ownership and physical relinquishment of the property.'" *United States v. Crumble*, 878 F.3d 656, 659 (8th Cir. 2018) (quoting *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997)). "Courts only consider 'the objective facts available to the investigating officers, not . . . the owner's subjective intent.'" *Id*. (quoting *United States v. Nowak*, 825 F.3d 946, 948 (8th Cir. 2016)). The Government bears the burden of showing property has been abandoned. *United States v. James*, 353 F.3d 606, 616 (8th Cir. 2003).

Here, the first factor in the abandonment analysis – denial of ownership – is certainly met. When Detective Vivona searched Defendant's person and recovered the key fob from Defendant's belt loop, Defendant uttered "This ain't my car." (Fact Nos. 17, 18) The record is less clear on whether Defendant physically relinquished the vehicle. Defendant did flee on foot when approached by law enforcement. (Fact No. 15) However, the Mercedes was parked at the time with its doors shut, and Defendant retained the key fob. (*See* Fact Nos. 9, 12, 17, 22) There is

7

conflicting evidence about whether the Mercedes was locked: Detective Vivona testified he believed the vehicle was locked, whereas Mrs. King testified it was not because she saw an officer unlock the doors using the key fob. (Fact Nos. 23, 33) Resolution of this conflict is not necessary, though, since law enforcement's search of the Mercedes was lawful under both the automobile exception and inventory search exception to the Fourth Amendment's warrant requirement.

### B. AUTOMOBILE EXCEPTION

A search by law enforcement must be conducted pursuant to a warrant in order to be "reasonable" under the Fourth Amendment unless one of the "few specifically established and well-delineated exceptions" to the warrant requirement exists. *United States v. Marshall*, 986 F.2d 1171, 1173 (8th Cir. 1993) (quoting *Mincey v. Arizona*, 437 U.S. 385, 390 (1978)); *see also* U.S. CONST. amend. IV. One such exception is the automobile exception, which allows officers to search a vehicle without a warrant if probable cause exists to believe that contraband or evidence of criminal activity is located inside. *United States v. Ross*, 456 U.S. 798, 825 (1982); *United States v. Merrett*, 8 F.4th 743, 751 (8th Cir. 2021). "Probable cause exists where, under the totality of the circumstances, there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *see also United States v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017); *United States v. Walker*, 840 F.3d 477, 484 (8th Cir. 2016). Officers "may draw upon inferences based upon their experience" in determining the existence of probable cause. *United States v. Cortez-Palomino*, 438 F.3d 910, 913 (8th Cir. 2006). Under the automobile exception, law enforcement are permitted to search the vehicle and any closed containers therein. *Murillo-Salgado*, 854 F.3d at 418; *United States v. Stringer*, 739 F.3d 391, 395 (8th Cir. 2014).

In this case, Detective Vivona observed what he believed to be Defendant selling narcotics from his gray Mercedes. To be sure, while conducting surveillance to apprehend Defendant on an outstanding warrant, Detective Vivona saw Defendant park the gray Mercedes in front of 3434 Park Avenue, roll down the window of the car, and conduct several hand-to-hand transactions with separate individuals who walked up to the Mercedes. (Fact No. 9) Detective Vivona was parked approximately one city block away and testified he was able to observe the exchanges. (Fact No. 10) He knew this location to be in a high narcotics trafficking area. (Fact No. 5) Although Detective Vivona could not see exactly what was exchanged, he testified his training and experience led him to believe that he had observed narcotics transactions. (Fact No. 9) Detective Vivona recovered $1,316 from Defendant's pant pocket during a search of Defendant's person incident to arrest. (Fact No. 17) Detective Vivona believed this money was associated with drug trafficking. (Fact No. 19) When Defendant disclaimed ownership of the Mercedes, Detective Vivona thought there was something in the car that Defendant did not want law enforcement to find. (Fact No. 22) The totality of these circumstances provide a "fair probability" that the Mercedes contained "contraband or evidence of a crime." Accordingly, officers were permitted to search the Mercedes without a warrant. Defendant's motion to suppress should be denied on this basis.

### C. INVENTORY SEARCH

A second exception to the Fourth Amendment's warrant requirement is an inventory search. *Marshall*, 986 F.2d at 1173-74. *See also United States v. Kennedy*, 427 F.3d 1136, 1143 (8th Cir. 2005) ("Police may conduct a warrantless search of a lawfully-impounded vehicle even in the absence of probable cause."). When the driver of a car is arrested, police may impound the vehicle and conduct an inventory search. *United States v. Stephens*, 350 F.3d 778 (8th Cir. 2003).

"The central question in evaluating the propriety of an inventory search is whether, in the totality of the circumstances, the search was reasonable." *United States v. Hall*, 497 F.3d 846, 851 (8th Cir. 2007) (quoting *Kennedy*, 427 F.3d at 1143).

"Inventory searches that are 'conducted according to standardized police procedures' are reasonable." *Id*. (quoting *Kennedy*, 427 F.3d at 1143). *See also United States v. Garreau*, 658 F.3d 854, 857 (8th Cir. 2011). "The requirement that officers follow standard procedure in conducting inventory searches does not foreclose the use of some discretion by officers 'so long as that discretion is exercised according to standard criteria and on the basis or something other than suspicion of evidence of criminal activity.'" *Hall*, 497 F.3d at 851 (quoting *Colorado v. Bertine*, 479 U.S. 367, 375 (1987) (holding warrantless inventory search valid if it is conducted pursuant to standardized police procedures and not done in bad faith or for the sole purpose of investigation)). The presence of an investigative motive "does not invalidate an otherwise valid inventory search." *United States v. Arrocha*, 713 F.3d 1159, 1164 (8th Cir. 2013) (quoting *United States v. Garner*, 181 F.3d 988, 991 (8th Cir. 1999)). *See also United States v. Harris*, 795 F.3d 820, 822 (8th Cir. 2015) (quoting *United States v. Pappas*, 452 F.3d 767, 771 (8th Cir. 2006)) ("The police are not precluded from conducting inventory searches when they lawfully impound the vehicle of an individual that they also happen to suspect is involved in illegal activity."); *Marshall*, 986 F.2d at 1174-75; *United States v. Porter*, 859 F.2d 83, 85 (8th Cir. 1988) ("[A]n officer's suspicion that evidence may be present does not invalidate an otherwise lawful inventory search.").

Section E of the KCPD's towing policy, which governs when a vehicle is stopped and an arrest is made, is the provision applicable to the November 11, 2020, inventory search of

10

Defendant's Mercedes. (*See* Tr. at 38-40) Section E(2)(b) states, in relevant part, that officers "<u>may</u> . . . [w]ith the operator's (arrestee's) permission, release the vehicle to any passenger or other person who has a valid driver's license and is not intoxicated." (Gvt. Exh. 3, p. A-6) (emphasis added). The express language of this provision gives law enforcement discretion concerning whether they release a vehicle to a qualified third party; it does not require them to do so.[1] Any factual discrepancies about whether Mrs. King was present in time and requested the Mercedes prior to it being towed are, therefore, immaterial. The Mercedes was illegally parked blocking a driveway. (Fact Nos. 22, 31) Defendant was arrested and otherwise not lawfully permitted to drive. (Fact Nos. 17, 21, 31) Officers were thus permitted to tow the Mercedes and complied with the KCPD's towing policy by first conducting an inventory search. Defendant's motion to suppress should also be denied on this basis.

## IV. CONCLUSION

For the reasons set forth above, it is

RECOMMENDED that the Court, after making an independent review of the record and the applicable law, enter an order denying Defendant's motion to suppress.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has fourteen days from the date of this Report and Recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the Report and Recommendation

---

[1] Furthermore, the record does not contain any evidence that Defendant asked to contact anyone to take custody of the Mercedes upon his arrest. (Fact No. 24) *See United States v. Morris*, 915 F.3d 552, 556 (8th Cir. 2019) (quoting *United States v. Agofsky*, 20 F.3d 866, 873 (8th Cir. 1994)) ("Nothing in the Fourth Amendment requires a police department to allow an arrested person to arrange for another person to pick up his car to avoid impoundment and inventory."). In fact, the record does not show Defendant ever even admitted an interest in the car.

which are accepted or adopted by the District Judge except upon the ground of plain error or manifest injustice.

                                          /s/ *Jill A. Morris*
                                        JILL A. MORRIS
                         UNITED STATES MAGISTRATE JUDGE